COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                                    SUPREME JUDICIAL COURT
                                                FOR SUFFOLK COUNTY
                                                BD-2023-0003


IN RE PAUL S. HUGHES, ESQ.


<u>MEMORANDUM OF DECISION</u>

The Board of Bar Overseers (board) has filed an information recommending that the respondent, Paul S. Hughes, be disbarred from the practice of law, based primarily on the board's determination that the respondent intentionally misused client funds, with deprivation resulting.  The respondent does not challenge the hearing committee's subsidiary findings or conclusions as to misconduct, which were adopted by the board. He instead argues that the board erred its application of mitigating and aggravating factors, and in recommending disbarment as a sanction.  For the reasons that follow, I agree with the board's recommendation and order that the respondent be disbarred.

<u>Background</u>.  This matter arises from the respondent's representation of two sets of homeowners (Family 1 and Family 2) who engaged him to represent them in the sale of their homes

after they each suffered devastating fire losses.  As to Family 1, a hearing committee of the board concluded that the respondent had committed numerous offenses related to his misappropriating at least $125,250 of Family 1's insurance proceeds in his IOLTA account.[1]  The committee found that the respondent admitted to substantially all of the misconduct, and that his misappropriation caused harm to Family 1 because it delayed their paying off their mortgage as they sought to buy a new home, leading them to "los[e] out on other housing options and [incur] an additional $8,000 in interest payments."

As to Family 2 the committee concluded that the respondent misused at least $35,750 of their funds and committed other

---

[1] The full list of violations related to Family 1, as found by the committee, is as follows:  (1) failure to safeguard client trust funds in his IOLTA account (Mass. R. Prof. C. 1.15[b]); (2) intentionally misusing trust funds from his IOLTA account for his own personal and business purposes and/or to pay third parties, with at least temporary deprivation (Mass. R. Prof. C. 1.15[b], 8.4[c], and 8.4[h]); (3) commingling personal funds with client trust funds (Mass. R. Prof. C. 1.15[b]); (4) failure to promptly deliver funds to clients that they were entitled to receive (Mass. R. Prof. C. 1.15[c]); (4) failure to render a full written accounting to the clients upon distribution of the trust funds (Mass. R. Prof. C. 1.15[d][1]); (5) failure to provide an accounting prior to the withdrawal of trust funds from his IOLTA account for the purposes of paying his fee (Mass. R. Prof. C. 1.15[d][2]); and (6) failure to deposit client funds into an individual trust account with the interest payable as directed by the clients (Mass. R. Prof. C. 1.15[e][6]).

related offenses.[2]  The respondent claimed that he had made full restitution to Family 2 by remitting some of the funds and keeping the balance based on legal services rendered.  The committee, however, found no basis for his "back-charges," meaning he was not entitled to any off-set, and therefore had not made complete restitution.[3]

The hearing committee found no factors in mitigation, but several in aggravation:  (1) the cumulative effect of multiple violations; (2) substantial practice experience; (3) the clients' vulnerability; and (4) uncharged misconduct, including

---

[2] The complete list of violations found by the committee with respect to Family 2 is as follows: (1) failure to safeguard client's trust funds in his IOLTA account (Mass. R. Prof. C. 1.15(b)); (2) intentionally misusing trust funds for his own personal and business purposes with continuing deprivation (Mass. R. Prof. C. 1.15(b), 8.4(c) and (h)); (3) failure to promptly deliver funds to the client that they were entitled to receive (Mass. R. Prof. C. 1.15(c)); (4) failure to promptly render a full written accounting to the clients upon final distribution of the trust funds (Mass. R. Prof. C. 1.15(d)(1)); (5) failure to provide an itemized bill or other accounting, notice of the amount and date of the withdrawal, statement, and the balance of the account to the client prior to the withdrawal of trust funds from his IOLTA account for the purposes of paying his fee (Mass. R. Prof. C. 1.15(d)(2)).

[3] In addition to the violations specific to Family 1 and Family 2, the committee also found that the respondent failed to maintain for his IOLTA account a chronological check register identifying the client matter for which funds were deposited and disbursed, and individual client registers; and that he failed to prepare and retain reconciliation reports no less frequently than every sixty days, constituting violations of Mass. R. Prof. C. 1.15(f)(1)(B), (C), and (E).

intentional misuse of another client's funds, knowingly making false statements to the closing law firms when Family 1 was buying a new home, lying to Family 2 and concealing the misuse of their funds when asking them to write a letter on his behalf concerning his pending disciplinary investigation, and using a contingent fee agreement that did not comply with Mass. R. Prof. C. 15.  Ultimately, the committee determined that the appropriate sanction was disbarment.

The respondent appealed the committee's sanction to the board.  With the exception of certain aggravating factors, the board adopted the committee's findings of fact and conclusions of law, and voted unanimously to recommend that the respondent be disbarred.  On January 6, 2023, the board filed an information in the county court, pursuant to S.J.C. Rule 4:01, § 8(4), as appearing in 425 Mass. 1309 (1997).

At a hearing before this court on February 21, 2023, the respondent acknowledged that there is no dispute as to the misconduct, but argued that a sanction of indefinite suspension, and not disbarment, is warranted.[4]

---

[4] In a filing, the respondent also contends that the proceedings before the board did not comport with due process, for two reasons.  First, he argues that his right to counsel was violated when, before adjourning the second day of the hearing, the hearing officer instructed the respondent to not speak to his attorney regarding his testimony, as it was not complete. Both the respondent and his counsel consented to this instruction, and in any event, "[t]here is no right to counsel

Discussion.  When determining the appropriate discipline, the single justice considers the sanctions that have been imposed in comparable cases.  See, e.g., Matter of Finn, 433 Mass. 418, 423 (2001).  In addition, while "the board's recommended disciplinary sanction" is "afford[ed] substantial deference," each case must ultimately turn "on its own merits[, such that] every offending attorney ... receive[s] the disposition most appropriate in the circumstances."  Matter of Lupo, 447 Mass. 345, 356 (2006), quoting Matter of Griffith, 440 Mass. 500, 507 (2003) and Matter of the Discipline of an Attorney, 392 Mass. 827, 837 (1984).

Where "an attorney intended to deprive the client of funds, permanently or temporarily, or [where] the client was deprived of funds (no matter what the attorney intended)," the presumptive sanction is indefinite suspension or disbarment. Matter of Schoepfer, 426 Mass. 183, 187-188 (1997).  "[T]he court generally considers whether restitution has been made in choosing between disbarment and indefinite suspension."  Matter of LiBassi, 449 Mass. 1014, 1017 (2007).  However, "[i]t is

---

in bar discipline."  See Matter of Jones, 425 Mass. 1005, 1007 (1997).  Second, he contends that bar counsel knowingly introduced false evidence.  These allegations amount to disputes over witness credibility, and the board's factual findings are supported by the record.  See Matter of Haese, 468 Mass. 1002, 1007 (2014).  I therefore must reject the respondent's due process claims.

established that, where a respondent has intentionally misused client funds, and failed to pay his client all that was due to her, the usual and presumptive sanction is disbarment." Matter of Dasent, 446 Mass. 1010, 1012-13 (2006).

The respondent proposed four factors in mitigation of sanction:  his poor mental health, the stress of suffering alleged extortion, his cancer diagnosis and family circumstances, and his attempts at restitution.  The hearing committee and the board declined to weigh any of these factors in mitigation.  For the reasons that follow, I agree with this approach.

It was the respondent's burden to demonstrate that each of the proposed factors warranted mitigation of sanction.  See Schoepfer, 426 Mass. at 188.  With respect to the first three proposed factors, the committee correctly concluded that the respondent failed to meet that burden because "no causal relationship was demonstrated between the respondent's misconduct" and the proposed mitigating evidence.  Matter of Dragon, 440 Mass. 1023, 1024 (2003).  See Matter of Zankowski, 487 Mass. 140, 153 (2021) ("While her circumstances are troubling, the evidence does not demonstrate that these factors were a substantial contributing cause of the misconduct, and they cannot be weighed in mitigation"); Matter of Haese, 468 Mass. 1002, 1007-1008 (2014) (serious medical issues not

mitigating for attorney who intentionally misappropriated client funds as misappropriation was not causally related to illness). Though the respondent's psychiatrist testified with respect to the respondent's mental health, including the impact of the purported extortion, the hearing committee was justified in refusing to credit his opinion where the witness, by his own admission, was not aware of the extent of the respondent's misconduct.  See Matter of Johnson, 452 Mass. 1010, 1011 (2008) (declining to consider mental health as mitigation where respondent was "less than candid with her therapist concerning her serial and systematic misuse of clients' funds for personal uses").  I also see no reason to disturb the committee's determination that the respondent's own testimony on these subjects was not credible.  See Haese, supra at 1007, quoting Matter of McBride, 449 Mass. 154, 161-162 (2007) ("The hearing committee is the 'sole judge of credibility, and arguments hinging on such determinations generally fall outside the proper scope of our review'").  Further, the respondent's continued practice of law and his methodical and systematic misuse of the funds are also inconsistent with the conclusion that he had a cognitive disability.  See Johnson, supra.

With respect to restitution, the final factor urged in mitigation, the board found that the respondent made partial

restitution to both sets of clients, but declined to weigh those efforts in mitigation.[5]

Although the respondent made substantially complete restitution to Family 1, his restitution to Family 2 is a different matter.  The respondent has yet to remit $13,621 to them, and "[p]artial restitution, however, even if substantial, is not a substitute for full restitution."  <u>Matter of Collins</u>, 455 Mass. 1020, 1022 (2010).  Moreover, the committee found that the respondent's failure to do so "lack[ed] a semblance of good faith," as he attempted to "claim[] the balance as an offset . . . with fees that he never had billed and had never discussed with his clients."[6]  Although in a vacuum the respondent's restitution to Family 1 might be a mitigating factor, here it is overshadowed by the circumstances of his failure to make restitution to Family 2.  See <u>Matter of Bryan</u>, 411 Mass. 288, 291 (1991) (failure to make complete restitution factor supporting disbarment even though eleven of twelve clients made

---

[5] With respect to Family 1, the board determined that the respondent repaid all but approximately $50.58 of the money that he took from them, and did so prior to bar counsel's investigation.  As to Family 2, the board found that the respondent had improperly retained $37,500 of Family 2's funds for years, and by the time of the hearing still owed then $13,621.

[6] To the extent that the respondent disputes these findings -- he explains the shortfall as "a disagreement as to the amount" of restitution in his supplemental brief -- I must reject his arguments, as the findings are supported by substantial evidence.

whole).  I therefore agree with the board's conclusion that
restitution is not a significant factor in mitigation.

Finally, the board adopted the committee's findings as to
two factors in aggravation:  the multiplicity of the
respondent's violations of the Rules of Professional Conduct,
see Matter of Saab, 406 Mass. 315, 327 (1989) ("consideration of
the cumulative effect of several violations is proper"), and his
long experience as an attorney,[7] see Matter of Luongo, 416 Mass.
308, 312 (1993) (citing with approval American Bar Association
standard listing substantial experience as an aggravating factor
and observing that "[a]n older, experienced attorney should
understand ethical obligations to a greater degree than a
neophyte").  I note that the multiple violations are confined to
conduct regarding the insurance proceeds for the two clients.
Further, the respondent's experience is a somewhat generalized
factor.  Thus, although I agree with the board that these two
factors are appropriate to consider, I do not afford either
factor considerable weight.

Here, the respondent misappropriated client funds.  The
deprivation caused harm to Family 1, and the respondent has yet
to make full restitution to Family 2.  There are no special
mitigating factors to weigh, and two factors to weigh somewhat

_____

[7] The respondent was admitted to the bar in the Commonwealth
in 1977.

in aggravation.  Reviewing the sanction imposed in similar
cases, and bearing in mind the "substantial deference" I afford
the board's recommended disposition, Lupo, 447 Mass. at 356, I
conclude that disbarment is appropriate.  See McBride, 449 Mass.
at 164 ("misappropriation of client funds alone justifies
disbarment"); Dasent, 446 Mass. at 1012-1013 (imposing
disbarment where attorney intentionally misused client funds,
failed to repay full amount owed, committed multiple ethical
violations, and showed no special mitigating factors); Bryan,
411 Mass. at 292 ("The attorney's repetitive wrongdoing; his
conversion of clients' funds; the loss of funds by one client;
the attorney's continued wrongdoing, even after disciplinary
proceedings had commenced; and the absence of any substantial
mitigating factor [such as complete restitution], collectively,
support an order of disbarment").  See also Haese, 468 Mass. at
1008 (disbarment appropriate where "the respondent intentionally
converted client funds, with deprivation resulting, and acted
with intentional dishonesty" notwithstanding that he made full
restitution).

Conclusion.  In accordance with the judgment accompanying my decision in this case, the respondent shall be disbarred from the practice of law.


                                    /s/ David A. Lowy
                                    David A. Lowy
                                    Associate Justice


Dated:  May 25, 2023